**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **SPRING BRANCH INDEPENDENT SCHOOL DISTRICT,** | § § | |
| *Plaintiff,* | § § | |
| | § | **CIVIL ACTION NO. 4:16-cv-02643** |
| **v.** | § § | |
| **O.W. b/n/f HANNAH W.,** | § | |
| *Defendants.* | § | |

### SBISD'S SUPPLEMENTAL BRIEFING

Plaintiff Spring Branch Independent School District (SBISD or the District) files this Supplemental Briefing as requested by the Court (Dkt. No. 86) as follows:

The Court posed the following questions for further briefing:

**(1) the appropriateness and legal authority justifying or precluding an award of tuition reimbursement for two school years even though O.W. only attended SBISD for one year (the parties should assume this Court will find that SBISD violated its Child Find obligation and failed to properly implement O.W.'s IEP when answering this question);**

There is no legal basis supporting the award of two years of compensatory services in this case. The hearing officer awarded one year of compensatory educational services based on her findings that 1) SBISD failed to timely offer O.W. an IEP from August 2014 until March 2015; and then 2) failed to properly implement the IEP from March 2015 until the end of the school year. AR at p.80. She ordered this year of compensatory education to be provided in the form of reimbursement for Fusion for the upcoming 2016-2017 school year. AR at pp.78, 80, 98. With respect to the year two award, the hearing officer explained that returning O.W. to SBISD for the 2015-2016 school year "could have resulted in serious emotional harm to him." AR at p.98. In response to the fear of future harm, she provided compensatory educational services in the form of reimbursement for the expenses incurred during the 2015-2016 school year, while the litigation

was pending. AR at pp.5-6.

### *Year One Award Inappropriate*

With respect to the year one award, the hearing officer awarded relief for a period of time SBISD did not even owe O.W. a FAPE under the IDEA. While acknowledging courts have "broad discretion" to grant "appropriate" relief under the IDEA, the Fifth Circuit warned that what is appropriate must "be determined in light of the purpose of the Act, the best evidence of which is the statutory text itself." *Dallas Indep. Sch. Dist. v. Woody,* 865 F.3d 303, 318 (5th Cir. 2017) (internal quotations omitted). With this understanding, the Fifth Circuit explained that reimbursement is only available for the period of time SBISD owed O.W. a FAPE; that is, from the date an ARD Committee should have determined O.W. was eligible for IDEA services, and not during the time it was permitted to conduct evaluations.[1] *See id*. at 322 (reversing district court's award of tuition reimbursement for period prior to ARD meeting, because applicable timelines give school time to evaluate and "we may not reach back to a time before a school district's obligations under the Act accrued."). Assuming, *arguendo*, SBISD should have referred O.W. for an evaluation on the limitations date, October 28, 2014, the date for O.W.'s ARD meeting under applicable timelines would have fallen on or about the same date the ARD was convened, March 11, 2015. *See discussion infra* at pp. 9-10 (summarizing applicable Child Find timelines in response to the Court's second question). Consequently, the hearing officer's award of compensatory services for the seven-month period, from August 2014 until March 2015, was erroneous as a matter of law.

---

[1] None of the cases cited by O.W. suggest relief is available for the time period prior to the date the student was, or should have been, determined eligible for special education. *See e.g.*, *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 11 (1993) (awarding tuition reimbursement for three years of private tuition incurred by the family *while the litigation was pending*); *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1287-88, 1290 (11th Cir. 2008) (awarding tuition reimbursement for years within limitations period, all years the student was eligible for special education, plus prospective placement in private school due to a finding the school's "tragic" handling of the student's education for a period of five plus years resulted in it "forfeiting its right to continue to educate" the student).

2

With respect to the approximately three-month period from the date of the ARD meeting, March 2015, until the end of the school year, June 2015, "appropriate relief" should be "reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1290 (11th Cir. 2008); *see Jackson v. Franklin County*, 806 F.2d 623, 631 (5th Cir. 1986) (degree of deprivation is one potential factor to consider in crafting remedies for IDEA violations). As the Fourth Circuit explained, a compensatory education award "involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a given period to provide a FAPE to a student." *G. vs. Fort Bragg Indep. Sch. Dist.,* 343 F.3d 295, 309 (4th Cir. 2003). Importantly, the hearing officer failed to analyze the extent to which O.W. suffered an educational injury, and failed to calibrate the award to the evidence of actual harm.

In support of the award, the hearing officer stated that O.W. had "so regressed in his therapy after some time at Ridgecrest that it was difficult for him to learn or even go to school." AR at p.99. However, even if things were "difficult" for O.W. at Ridgecrest, which is understandable considering the looming criminal proceedings and transition into a new behavioral program, the evidence establishes he was making both academic and non-academic progress with the significant supports in place. Dkt. No. 42 at pp. 28-32. The relief the hearing officer provided appears to be premised on a finding that SBISD did not implement any portion of the IEP as opposed to an imperfect implementation of the lengthy 34-page document. AR at pp.1609-1648 (March 11, 2015 IEP). Under Fifth Circuit precedent, SBISD was not required to implement the IEP perfectly. *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 349 (5th Cir. 2000) (concluding schools have flexibility in implementing IEP and party challenging the implementation must demonstrate a

failure to implement "substantial or significant provisions of the IEP"). It is manifestly inequitable to ignore the benefits O.W. did receive in calibrating the award simply because the IEP was imperfectly implemented. The student received extensive services in a classroom with a certified special education teacher, a low student-to-teacher ratio, and had weeks at a time where he displayed no significant behaviors that interfered with his education. *See e.g.,* AR at p.66, ¶242 (noting "not a single incidence" of verbal threats to peers or adults from April 7-14; and no physical aggression between April 7 - May 4). In fact, the only academic "weakness" O.W. ended the school year with was in math. However, despite this relative weakness, not only did he pass his fifth-grade math class at Ridgecrest, but he enrolled in sixth-grade math at Fusion over the summer and received an A+. AR at p.1720 (report card showing 70 in math at Ridgecrest for 9-week grading period); AR at p.1911 (indicating enrollment in Math 6 at Fusion over summer); p.101, ¶14 (regarding A+ in math). This progress is especially illuminating in light of O.W.'s father's explanation that when O.W. enrolled in SBISD for fifth grade that he had been without any "real" academic instruction for the previous four years in his private school placements. AR at p.1836.

With respect to behavior, the hearing officer emphasized that O.W.'s behavior so regressed in the Ridgecrest program that SBISD shortened his day down to 3 hours/day before his parent withdrew him. AR at p.80. However, O.W. has a very long history of significant behavioral concerns, behaviors that required shortened school days in private school settings, not just in SBISD. AR at pp.12-14, ¶¶4-18 (noting at paragraph 16 that shortened school days were successful in the private school and he eventually worked back up to full days but never 5 days per week). In fact, even at Fusion, the program the hearing officer found appropriate and reimbursable, O.W.'s school day was shortened even more; he attended just 2-3 hours a day, 4 days/week due to

4

behavioral concerns with his peers.[2] Dkt. No. 79, p. 142 (lines 21-25), p. 143 (lines 1-13) (Fusion's Head of School, Elizabeth Beguerie, testifying regarding O.W.'s schedule); *see also*, AR at p.101, ¶9 (explaining typical Fusion schedule). Consequently, the suggestion that O.W. should have experienced immediate and more significant behavioral gains in SBISD, in just a short, three-month period, is not only speculative, but defies logic. AR at p.44, ¶123 (indicating that although O.W.'s conduct was still "unsatisfactory," overall O.W. was "showing slow progress of improvement"); AR at pp.66-67, ¶¶242-43 (documenting behavioral improvement in targeted areas). It is illogical to conclude SBISD should achieve behavioral improvements greater than a private school that is deemed appropriate.

Accordingly, there is no evidence in the record supporting the conclusion that SBISD's program resulted in any deficits, academic or non-academic, that did not exist before he entered the program at Ridgecrest and no award of compensatory education is appropriate. Additionally, assuming *arguendo* there was evidence of educational harm, the "harm" was not sustained beyond his withdrawal from SBISD. To the contrary, once the criminal proceedings were resolved, the demands of functioning in social situations with his peers removed, and minimal academic demands instituted, the alleged detrimental effects of the Ridgecrest program disappeared "immediately." AR at p.104, ¶27 (explaining O.W.'s "success" at Fusion with guitar, yoga and math classes was "immediate"). In other words, there was no evidence that he required any period of private school reimbursement to make up for any educational deficit he may have sustained during the short three months he was in special education.[3]

---

[2] Immediately upon finishing guitar and yoga and enrolling in more academic-oriented courses, Fusion saw a dozen behavioral incidents in a one-month period prompting it to eliminate the three hours of unstructured homework time. AR at p.103, ¶¶20.b and 20.d (noting elimination of unstructured time).

[3] Had the hearing officer ordered SBISD to cease acts she found contrary to the otherwise appropriate IEP, instead of improperly awarding the prospective year of tuition reimbursement, SBISD would have been required to implement those orders, and O.W. could have returned to SBISD and received a FAPE. 19 Tex. Admin. Code §89.1185(o) (permitting school to withhold reimbursement award, but requiring school to implement any decision of the hearing

*Year Two Award Inappropriate*

In support of the second year of compensatory education, the hearing officer found O.W.'s return to SBISD for the 2015-2016 school year "could have resulted in serious emotional to him." AR at p.98. As already noted, compensatory education is designed to remedy a deficit caused by a past harm. The year two award was provided based upon a fear of a future denial of FAPE, not to compensate for a past wrong-doing; indeed the past-wrongdoings had already purportedly been compensated for with the first year of tuition reimbursement. Consequently, the second year of tuition reimbursement cannot fairly be characterized as compensatory education, instead it is compensatory damages disguised as compensatory education. *See Wood v. Katy Indep. Sch. Dist.*, 2010 U.S. Dist. LEXIS 146682, at *16-17 (S.D. Tex. Sept. 27, 2010) (citing *Marvin H. v. Austin Indep. Sch. Dist.,* 714 F.2d 1348, 1356 (5th Cir. 1983) in concluding neither compensatory nor punitive damages are available under the IDEA). For this reason alone, the year two award was inappropriate under the IDEA.

Moreover, the hearing officer misinterpreted and misapplied the exception to the IDEA's notice requirement in ignoring the family's failure to comply with the 10-day notice requirement. Under the IDEA, a family must tell the student's ARD committee about their concerns, or to at least provide the school with 10-days written notice of their concerns and their intention to withdraw a student from school and seek tuition reimbursement. *See* 20 U.S.C. §1412(a)(10)(C)(iii)(I); *see also*, 34 C.F.R. §300.148(d)(1); *see W.D. v. Watchung Hills Regional High Sch.,* 602 Fed. App'x 563, 567-68 (3d Cir. 2015) (refusing to excuse failure to provide notice when it deprived school of opportunity to address the parent's concerns). The IDEA goes on to provide that tuition reimbursement can also be denied if the parents actions were unreasonable. 20

---

officer that is, at least in part, adverse to the public education agency within the timeframe prescribed by the hearing officer).

U.S.C. §1412(a)(10)(C)(iii)(III); *see also*, 34 C.F.R. §300.148(d)(3). The Fifth Circuit recognized the importance of the IDEA's emphasis on collaboration and held a family's failure to collaborate with a school was a bar to tuition reimbursement. *Rockwall Indep. Sch. Dist. v. M.C.,* 816 F.3d 329, 341 (5th Cir. 2016) (holding a family's refusal to participate in the "collaborative or interactive" approach contemplated by the IDEA is unreasonable and warrants a denial of private school tuition). Here, the family's failure not only to give 10-days notice, but their failure to attempt to collaborate with the ARD Committee in any manner regarding their concerns, even after they filed a due process hearing request, was unreasonable.

It is undisputed that the family did not give SBISD the requisite 10-day notice that they intended to enroll O.W. in private school and seek reimbursement. AR at p.75, ¶301; p.98. The hearing officer acknowledged the failure, but excused it because returning O.W. to the District "could have resulted in serious emotional harm to him." AR at p.98. However, under the regulatory provision, the harm exception can apply when "compliance [with the notice requirement] would likely result in serious emotional harm to the child." 34 C.F.R. §300.148(e)(2)(ii) (emphasis added). That is, the harm to which the exception applies must be likely to occur during the 10-day waiting period. There is no other logical interpretation. The hearing officer did not determine O.W. would be harmed during those 10 days, but rather that the harm would occur at some point in the future if the parent were to re-enroll him in SBISD for sixth-grade. In this case, not only is there no indication in the record that O.W. was at risk of suffering a serious emotional injury in SBISD[4] even in the future, but the parent knew they intended to enroll him in Fusion over the summer. *See e.g.*, AR at pp.94-95. Providing the requisite notice would not have exposed O.W. to any harm since school was not in session. Consequently, the only basis the hearing officer articulated for

---

[4] O.W.'s counselor testified regarding possible detrimental academic and social progress if he re-enrolled in SBISD, not his emotional status. *See* AR at p. 2169.

7

excusing the failure is inapplicable.

Instead of collaborating, the family kept SBISD in the dark until October 2016 when they filed a request for a due process hearing seeking reimbursement for unnamed private school expenses. AR at p.126. SBISD responded by suggesting an ARD meeting to discuss the family's concerns, but the family, yet again, refused to collaborate with SBISD and refused to participate in an ARD meeting. *See* AR at p.1938; p.2460 (lines 9-13); *see C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 72 (3d Cir. 2010) (explaining Congress "clearly" intended "that parents and school districts continue to work toward the resolution of disputes … even after a due process request is filed"). In fact, they kept SBISD in the dark regarding the identity of the private school until February 2016 when they filed an amended due process hearing complaint. AR at pp.94-95, 207. The only ARD meeting that convened ended in agreement. AR at p.1629. In addition, SBISD was misled into believing the family was collaborating regarding O.W.'s programming when they engaged in discussions about O.W.'s transition to Spring Forest Middle School, the new campus he would attend for fifth grade. AR at p.3048 (lines 19-25), p.3049 (lines 1-14) (SBISD's expert in behavior management and educational programming explaining the transition activities recommended including, but not limited to, a recommendation the parents visit the new campus). When the notice and collaboration provisions are properly applied and given the import Congress intended, it is clear the family should not be eligible to recover tuition expenses.

### *Fusion is not a reimbursable private placement under the IDEA.*

Lastly, as explained more fully in SBISD's Motion for Summary Judgment, an award of reimbursement for Fusion expenses is inappropriate because Fusion provides *none* of the special education services deemed necessary by both evaluations conducted of O.W., both SBISD's and Monarch's. AR at p.92 (noting SBISD's FIE and Monarch evaluation had similar

recommendations); Dkt. No. 42 at pp. 32-33. While the private school need not provide all of the special education services the child needs, it must offer at least *some* of the services recommended by the student's evaluators. *Lauren P. v. Wissahickon Sch. Dist.*, 310 Fed. App'x 552, 555 (3d Cir. 2009) (upholding denial of tuition reimbursement where private school did not address student's primary behavioral difficulties); *see also*, *Mr. I. v. Maine Sch. Administrative District*, 480 F.3d 1, 24-25 (1st Cir. 2007) (appropriateness of private placement "depends on the nexus between the special education required and the special education provided"). Fusion merely insulates O.W. from the source of his problematic behavior, social situations, and academic demands instead of providing him any assistance to make progress in that area. *See e.g.*, AR at p.74, ¶297 (finding student had "no problems" with the 1:1 lessons at Fusion).

**(2) if the Court finds SBISD violated its Child Find obligation, but did not fail to properly implement O.W.'s IEP, does the above analysis change, and, if so, how;**

No relief would be available in this situation. The Fifth explained that relief is available starting on the date O.W. should have been was determined to be eligible for IDEA services had all Child Find activities been taken in a timely manner. *Woody*, 865 F.3d at 322 (finding reimbursement prior to ARD date inappropriate because "we may not reach back to a time before a school district's obligations under the Act accrued."). The applicable statutory and regulatory timelines give SBISD "a reasonable time" to comply with its Child Find duties. *Woody*, 865 F.3d at 316-317 (finding evaluation timelines are not idle requirements). In Texas, schools have 45 school days to evaluate and another 30 calendar days to convene an ARD an offer an IEP. *See Woody*, 865 F.3d at 319 (summarizing regulatory timelines); *see also* 19 Tex. Admin. Code §89.1011(c)(1) (giving schools 45 schools to evaluate *plus* additional days if student is absent 3 or more days in that time period); 19 Tex. Admin. Code §89.1011(d) (providing 30 calendar days for school to develop proposal and make offer at ARD meeting). Assuming, *arguendo*, SBISD should

9

have referred O.W. for an evaluation on the limitations date, October 28, 2014, the date for the ARD would have fallen on or about the same date the ARD was held. *See* Dkt. No. 42 at p. 22 (SBISD's motion applying timelines from date of Section 504 meeting on October 8, 2014, a date *prior to* the limitations period, to establish less than 2-week delay in convening ARD meeting). Moreover, an appropriate IEP was offered on March 11, 2015. AR at p.106, ¶13. Consequently, because SBISD made a FAPE available to O.W. within a "reasonable time," no reimbursement is available if SBISD properly implemented the March 11, 2015 IEP.

**(3) if the Court finds SBISD did not violation its Child Find obligation, but did fail to implement O.W.'s IEP, does the above analysis change.**

The analysis would be the same as number 1 above.

**(4) The Court assumes that finding in SBISD's favor on both the Child Find issue and the implementation of the IEP issue would make any tuition reimbursement inappropriate. If this is incorrect, please address this scenario within the allotted page limit as well.**

The Court is correct; tuition reimbursement is not available absent a violation of the IDEA. *See Adam J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 811 (5th Cir. 2003) (when FAPE is provided, "any ruling on private placement [i]s merely *dicta*").[5]

---

[5] Although O.W. argues he would still be entitled to tuition reimbursement since the IEP was not designed to maximize his intellectual potential, the hearing officer determined the IEP was appropriate under the IDEA, nonetheless. AR at p.106, ¶13; pp.88-89, 106 ¶13. O.W. did not appeal that determination and it is final. Regardless, the Supreme Court in *Endrew F.*, held an IEP must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances," not just in light of his IQ. *Endrew F. v. Douglas County Sch. Dist. Re-1*, 137 S.Ct. 988, 999 (2017). The Court explained that "the question is whether the IEP is *reasonable*, not whether the court regards it as ideal." *Id.* (emphasis in original). Unfortunately, O.W.'s "circumstances" include a serious emotional disturbance that significantly interferes with his ability to function at school. *Ideally*, O.W. would not have a disability and could perform to his intellectual potential with ease, but that is not the circumstance in which he finds himself. The fact that he passed fourth grade, performed satisfactorily on the State tests he took, and was making progress in spite of his disability in the short three months he was in special education, is reasonable in light of his circumstances.

        Respectfully submitted,

        ROGERS, MORRIS & GROVER, L.L.P.

        _____

        AMY C. TUCKER
        Attorney-in-Charge
        Fed. I.D. No. 36798
        State Bar No. 24042068
        Email: atucker@rmgllp.com
        JEFFREY L. ROGERS
        Fed. I.D. No. 4522
        State Bar No. 17174500
        Email: jrogers@rmgllp.com
        5718 Westheimer, Suite 1200
        Houston, Texas 77057
        Telephone:  (713) 960-6000
        Facsimile:  (713) 960-6025

        ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

     I hereby certify that on February 5, 2018, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

        Sonja Kerr
        *(Via Email:* skerr@cuddylawfirm.com)

        Elizabeth Angelone
        *(Via Email:* eangelone@cuddylawfirm.com)

        Devin Fletcher
        *(Via Email:* dfletcher@cuddylawfirm.com)

        Dorene Philpot
        *(Via Email:* dphilpotlawtexas@gmail.com)

        _____
        Counsel for Plaintiff